**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

TANJANEKA JONES,                          *

      Plaintiff,                          *

v.                                                      **Case No.: GJH-20-3564**

                                                          *

ELI LILLY AND COMPANY,                    *

      Defendant.                          *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## **MEMORANDUM OPINION**

Plaintiff Tanjaneka Jones filed this lawsuit against her former employer Defendant Eli

Lilly and Company ("Eli Lilly"), alleging race and sex discrimination in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), Section 1981 of the Civil

Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and the Maryland Fair Employment

Practices Act ("MFEPA"), Md. Code Ann., State Gov't § 20-606,[1] retaliation in violation of

Title VII and MFEPA § 20-606, hostile work environment/ harassment in violation of Title VII

and MFEPA § 20-606, and retaliation in violation of the Family Medical Leave Act of 1993, 29

U.S.C. 2601, *et seq.* ("FMLA"). ECF No. 3. Several motions are pending before the Court,

including Defendant's Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 12, and

Plaintiff's Motion for Leave to Amend, ECF No. 18.[2] No hearing is necessary. *See* Loc. R. 105.6

---

[1] In Plaintiff's Amended Complaint, ECF No. 3, and proposed Second Amended Complaint, ECF No. 18-1, Plaintiff asserts claims under "§ 120-606" of the Maryland Fair Employment Practices Act, which does not exist. The Court understands this to be an error and interprets Plaintiff's claims under § 20-606.

[2] Also pending before the Court is Plaintiff's Consent Motion for Extension of Time to File Response/ Reply as to Defendant's Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 13, and Defendant's Motion to Withdraw as Attorney, ECF No. 22, which the Court now grants.

(D. Md. 2021). For the following reasons, Plaintiff's Motion for Leave to Amend, ECF No. 18, is denied, in part, and granted, in part; and Defendant's Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 12, is granted, in part, and denied, in part.

## I.     BACKGROUND[3]

### A.  Factual Background

Plaintiff, a Black female, began working as a Senior Sales Representative ("SSR") at Eli Lily, in or around 2014, where her primary duty was to sell pharmaceutical products. ECF No. 18-1 ¶ 6. At Eli Lilly, business sales controlled the SSR's income, benefits, and other opportunities. *Id.*

The Second Amended Complaint additionally alleges that yearly pay increases, quarterly bonuses, and the SSR's national and team ranking were based on sales performance. *Id.* ¶ 7. Therefore, Plaintiff's sales results were tracked by Defendant weekly, monthly, and quarterly to determine quarterly sales bonuses and payouts, and Defendant awarded annual "Achievement trips" based on sales, specifically for reaching "100% quota attain on primary sales products annually." *Id.* Defendant also offered yearly awards based on individual sales achievements that were recognized at its "annual Regional Meeting for Representative of the Year, Rookie of the Year, Outstanding Sales Performance for Jardiance," among others, and this recognition opened other opportunities for SSRs to obtain job advancement and pay increases. *Id.* Plaintiff alleges that she "met or exceeded her performance goals in sales" as required by Defendant Eli Lilly. ECF No. 3 ¶ 6; *see also* ECF No. 18-1 ¶8.

---

[3] Unless stated otherwise, all facts are taken from Plaintiff's proposed Second Amended Complaint or documents attached to and relied upon in the proposed Second Amended Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In or around May 2019, David Sun, an Asian male, began supervising Plaintiff's team. ECF No. 18-1 ¶ 8. At that time, the team was one of Defendant's top five teams in the country and Plaintiff was ranked number two on her team and was exceeding Defendant's sales goal by nine percent. *Id*. Plaintiff alleges that despite her success, Sun placed her on a Performance Improvement Plan (PIP), after supervising her for one month, and "overly scrutinized and criticized Plaintiff's work performance" and "relied on false and subjective reasons to discipline her." ECF No. 18-1 ¶ 9. Plaintiff further alleges that Sun did not overly scrutinize or criticize the performance of Douglas Barna and Brandon Fell, both Caucasian male SSRs under his supervision, who Plaintiff alleges had "far lower sales and sales rankings" than she did. ECF No. 18-1 ¶ 10. Plaintiff also alleges that, though he failed to meet Defendant's sales quota, Fell was not placed on a PIP like Plaintiff. *Id.*

In or around June 2019, Plaintiff learned that Sun scrutinized and criticized Krystle Allen, a female SSR, who met Defendant's sales quotas as Plaintiff had, and thereafter Plaintiff contacted Defendant's Human Resources ("HR") representatives "several times" between June 2019 and November 2019 requesting assistance. ECF No. 18-1 ¶ 11. In or around October 2019, Plaintiff spoke with HR and stated that "Mr. Sun was discriminating against her because of her race and gender by overly scrutinizing and criticizing her work performance as compared to her Caucasian male colleagues and placing her on a PIP for false reasons." ECF No. 18-1 ¶ 12. Plaintiff also informed HR that Allen, who also exceeded sales goals, was "overly scrutinized and criticized" by Sun, as compared to Fell and Barna. *Id.* Though Plaintiff requested the assistance of HR, she contends that HR failed to help her and that, after HR spoke with Sun about Plaintiff's October 15, 2019 complaint, Sun "placed Plaintiff on probation [and] took away her bonus opportunity on or about October 16, 2019," making her ineligible for vacancies and

promotions with Defendant. *Id.* ¶ 13. She also alleges that Sun increased his scrutiny and critique of her performance and gave her a poor performance evaluation despite her increasing sales numbers and praise from clients. *Id.*

As a result of this treatment, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in November 2019, ECF No. 18-1 ¶ 14, after which Plaintiff contends Sun's "harassment of her increased and began occurring almost every week." *Id.* ¶ 15. Plaintiff contends that her "workplace felt more and more hostile because she was being disciplined for false reasons," instead of being congratulated for exceeding her sales goals and that, "due to Mr. Sun's discriminatory write-ups," her bonuses were revoked for "consecutive months beginning in October 2019," even though she was ranked second on her sales team. *Id.*

Plaintiff also alleges that Sun discriminated against William White and Brian Calloway, two Black SSRs also on his team, who Plaintiff alleges were also meeting sales goals. *Id.* ¶ 17. Similar to Sun's treatment of Plaintiff, he "overly scrutinized and criticized their performance and subsequently discharged or constructively discharged them for discriminatory reasons." *Id.* Further, Plaintiff alleges that Sun treated Barna and Fell, the Caucasian SSRs who had lower sales, "more favorably than the two Black SSRs," and that although Fell was below his sales quotas set by Defendant, "he was not discharged or constructively discharged like the Black male SSRs." *Id.* ¶ 18. Plaintiff alleges that "Defendant allowed Mr. Sun to hold [her] and other Black employees to a higher performance standard than their similarly situated nonminority colleagues," "falsely accuse[] [her] of having performance issues when she was exceeding sales goals," and "repeatedly issue false write ups to Plaintiff and threate[n] her with termination and place[] her on PIPs[.]" ECF No. 18-1 ¶ 36. This alleged conduct occurred "two or three times a

week and caused Plaintiff to feel harassed and unsafe," *Id. ¶* 37, and led to the denial of her

bonuses, stock options, and limited her ability to "compete for promotions or transfers with

Defendant." *Id. ¶¶* 39, 23.  Plaintiff contends that Sun's "repeated, unwelcomed, retaliatory, and

discriminatory PIPs" caused her "working conditions to become [so] intolerable" that she was

forced to resign in December 2019, and that she "suffered from anxiety and severe emotional

distress." *Id. ¶* 19.

### B. Procedural History

On November 13, 2019, Plaintiff filed an EEOC Charge of Discrimination against

Defendant. ECF No. 12-2[5]; ECF No. 18-1 *¶* 14. In the Charge of Discrimination, Plaintiff

alleged the following:

> I began my employment as a senior sales representative with the above-named
> [Defendant] on August 1, 2014. On October 15, 2019, I complained to Grace Faulkner,
> human resources, employee relations and investigations, in regard to district manager,
> David Suns dismissive and demeaning behavior towards me. On October 16, 2019, I was
> placed on probation which resulted in my bonus incentive being restricted.
>
> [Defendant's] stated reason for its action was my performance was unacceptable.
>
> I believe I have been discriminated against with respect to being placed on probation
> based on my sex (female) and in retaliation for engaging in a protected activity, in
> violation of Title VII of the Civil Rights Act of 1964, as amended.

ECF No. 12-2. Plaintiff checked the boxes on the Charge form for discrimination based upon sex

and retaliation, with both the earliest and latest date of discrimination being October 16, 2019.

*Id.*  On or about February 28, 2020, Plaintiff filed a Complaint against Defendant in the Circuit

Court for Prince George's County, Maryland (CAL20-08247), which Defendant alleges was not

---

[5] When considering a motion to dismiss an employment discrimination claim, a court may consider documents
attached to the motion if they are integral to the complaint and authentic. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d
176, 180 (4th Cir. 2009); *see also Holowecki v. Fed. Express Corp.,* 440 F.3d 558, 565–66 (2d Cir. 2006) ("In
reviewing the Rule 12(b)(6) ruling, it is proper for this court to consider the plaintiffs' relevant filings with
the EEOC . . . [not] attached to the complaint, because the [plaintiffs] rely on these documents to satisfy the . . . time
limit requirements.").

served. ECF No. 1 ¶ 1. Then, on October 21, 2020, Plaintiff, *pro se*, filed an Amended

Complaint in the Circuit Court for Prince George's County against Defendant. ECF No. 3. The

Amended Complaint alleged race and sex discrimination in violation of Title VII[6], Section 1981,

and MFEPA § 20-606 (Count I), retaliation in violation of Title VII and MFEPA § 20-606

(Count II), hostile work environment/ harassment in violation of Title VII and MFEPA § 20-606

(Count III), and retaliation in violation of the FMLA (Count IV). *Id.*

Defendant removed the action to this Court on December 9, 2020, ECF Nos. 1–6. On

January 29, 2021, Defendant filed its pending Motion to Dismiss Plaintiff's Amended

Complaint. ECF No. 12.

On March 11, 2021, Plaintiff filed an Opposition to Defendant's Motion to Dismiss, ECF

No. 17, and her Motion for Leave to Amend, ECF No. 18.[7] The proposed Second Amended

Complaint alleges some of the same claims brought in the Amended complaint, though under

different statutes, and removes other claims entirely.[8] Specifically, the proposed Second

Amended Complaint alleges the following six counts: sex discrimination in violation of Title VII

and MFEPA § 20-606 (Count I), sex-based retaliation in violation of Title VII and MFEPA § 20-

---

[6] Neither Plaintiff nor Defendant provide a date upon which Plaintiff received her Notice of Right to Sue from the EEOC. *See generally* ECF No. 3, ECF No. 12-2, ECF No. 18-1. Plaintiff only alleges in her Amended Complaint, ECF No. 3, and proposed Second Amended Complaint, ECF No. 18-1 ¶ 5, that "Plaintiff filed her complaint within 90 days of receiving a right to sue letter" from the EEOC. Defendant does not contest that Plaintiff timely filed suit within ninety days of receiving the Notice of Right to Sue as required under 42 U.S.C. § 2000e-5(f)(1), *see generally* ECF No. 12.

[7] Although Plaintiff provided the Court with a copy of the proposed Second Amended Complaint, ECF No. 18-1, and the Memorandum in Support of the Motion for Leave to Amend, ECF No. 18, Plaintiff has failed to provide a redline clearly outlining the proposed changes to her proposed Second Amended Complaint in contravention of this Court's local rules. A party "requesting leave to file an amended pleading" must file a copy of the proposed amended pleading, Rule 103.6(a), along with "a copy of the amended pleading in which stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type," Local Rule 103.6(c).

[8] Plaintiff appears to abandon her FMLA retaliation claim as it was removed from the proposed Second Amended Complaint. *Compare* ECF No. 3 ¶ 34 *with* ECF No. 18-1.

606 (Count II), hostile work environment/ harassment in violation of Section 1981 (Count III),

race discrimination in violation of Section 1981 (Count IV), retaliation in violation of Section

1981 (Count V), and constructive discharge based on race and/or sex in violation of Title VII and

Section 1981 (Count VI). ECF No. 18-1.  On March 25, 2021, Defendant filed its Reply in

Support of Defendant's Motion to Dismiss, ECF No. 19, and its Opposition to Plaintiff's Motion

for Leave to Amend Complaint, ECF No. 20.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading once as

a matter of course within "21 days after serving it" or "21 days after service of a responsive

pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the

opposing party's written consent or the court's leave. The court should freely give leave when

justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has "interpreted Rule 15(a) to

provide that leave to amend a pleading should be denied only when the amendment would be

prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the

amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)

(internal quotation omitted). "An amendment is futile if it could not survive a motion to dismiss

for failure to state a claim." *Cutonilli v. Maryland*, 251 F. Supp. 3d 920, 923 (D. Md.), *aff'd,* 696

F. App'x 648 (4th Cir. 2017), *cert. denied,* 138 S. Ct. 456, (2017) (quoting *Perkins v. United

States*, 55 F.3d 910, 917 (4th Cir. 1995)). "Thus, if an amended complaint would not survive a

motion to dismiss for failure to state a claim upon which relief can be granted, the amendment is

futile and should be denied." *McCollum v. NJ Div. of Motor Vehicle*, No. 12-cv-1525-RDB, 2012

WL 6185647, at *4 (D. Md. Dec. 11, 2012) (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint[,]" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Further, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

## III.   DISCUSSION

Defendant argues that Plaintiff's proposed Second Amended Complaint is futile because (1) some of Plaintiff's claims are administratively barred due to the limited scope of her EEOC charge and (2) Plaintiff's fails to state a claim as to each count. *See* ECF No. 20 at 3.[9] The Court first addresses the issue of administrative exhaustion before reviewing each Count to determine whether it survives.

### A.  Administrative Exhaustion

With respect to Title VII claims, the Fourth Circuit has "held that the scope of the plaintiff's right to file a federal lawsuit is determined by the [EEOC] charge's contents" to prevent a plaintiff from "rais[ing] claims in litigation that did not appear in [her] EEOC charge." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (internal quotations and citations omitted).[10] A plaintiff "fails to exhaust [her] administrative remedies where . . . [her] administrative charges reference different time frames, actors, and discriminatory conduct than

---

[9] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[10] Title 20 is the "state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII." *Finkle v. Howard Cnty., Md.*, 12 F. Supp. 3d 780, 784 (D. Md. 2014) (citations omitted).

the central factual allegations in [her] formal suit." *See id.* (citing *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005)) (internal quotation marks omitted). For example, a Plaintiff fails to exhaust her administrative remedies where her charge alleges only racial discrimination, but her complaint includes allegations of sex discrimination. *Id.* (citing *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2002)). At the same time, "[a]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981) (citations omitted).

Plaintiff's EEOC Charge alleges discrimination based on "sex" and "retaliation," on one date: October 16, 2019, "with respect to [Plaintiff] being placed on probation based on [her] sex (female) and in retaliation for engaging in a protected activity," which Plaintiff alleged "resulted in [her] bonus incentive being restricted." ECF No. 12-2. The Charge makes no mention of constructive discharge as Plaintiff now alleges in Count VI of her proposed Second Amended Complaint. ECF No. 18-1 ¶¶ 56–58.[11] Though Plaintiff argues, correctly, that courts liberally construe EEOC charges, *see* ECF No. 17 at 6 (citing *Chacko*, 429 F.3d at 509), the Court is "not at liberty to read into administrative charges allegations they do not contain." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013). Although Plaintiff may not have drafted the Charge, if she determined "that [her] initial charge [did] not read as [she] intended . . . [she could have] file[d] an amended charge with the EEOC." *Id.* (citing 29 C.F.R. § 1601.12(b)). Following an administrative investigation, the additional allegations in the Second

---

[11] More specific allegations regarding her work being scrutinized and her file being papered with false discipline would reasonably be expected to be part of an administrative investigation of her claim that she was placed on probation because of her gender and for purposes of retaliation.

Amended Complaint cannot "reasonably be expected to follow [Plaintiff's] charge of discrimination." *See Chisholm*, 665 F.2d at 491; *see also Chacko*, 429 F.3d at 509 ("[W]e have held that the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct.").

The only claim that is properly exhausted under Title VII or Maryland law is the employment action alleged in Plaintiff's charge: discrimination with respect to being placed on probation, which led to her bonus being restricted, "based on [her] sex (female) and in retaliation for engaging in a protected activity[.]" ECF No. 12-2. Accordingly, the Court denies Plaintiff's Motion for Leave to Amend with respect to Count VI, constructive discharge, in violation of Title VII.[12]

### B. Sex Discrimination (Count I)

The Court next considers Plaintiff's sex discrimination claim. Specifically, whether the claim that she was "discriminated against with respect to being placed on probation based on [her] sex (female) and in retaliation for engaging in a protected activity," ECF No. 12-2, can withstand Defendant's Motion to Dismiss, ECF No. 12. Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of employment discrimination, the plaintiff must show: "(i) the plaintiff's membership in a protected class; (ii) satisfactory job performance; (iii) the existence of an adverse employment action; and (iv) different treatment from similarly situated employees

---

[12] Plaintiff concedes that she has failed to exhaust her administrative remedies as to any claim for race discrimination and hostile work environment/ harassment under Title VII or Maryland law as she has removed these claims from her proposed Second Amended Complaint. *Compare* ECF No. 3 *with* ECF No. 18-1.

outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (internal citation omitted). While a plaintiff "is not required to show a prima facie case to survive a motion to dismiss, the elements of a prima facie claim are helpful in analyzing the plausibility of the claim as alleged." *Brown v. Hous. Auth. of Baltimore City*, Civ. No. 16-cv-3616-MJG, 2017 WL 3189447, at *5 n.5 (D. Md. July 26, 2017).

Defendant argues that Plaintiff's allegations fail to establish the existence of an adverse employment action. *See* ECF No. 12-1 at 17; ECF No. 19 at 9; ECF No. 20 at 3. The Fourth Circuit has explained that "an adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). "An adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). "Although conduct short of ultimate employment decisions can constitute adverse employment actions, there still must be a tangible effect on the terms and conditions of employment." *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 737 n.6 (D. Md. 2009) (citation and internal quotation marks omitted).

In Plaintiff's proposed Second Amended Complaint, she alleges that she "lost bonuses, stock options, and the opportunity to apply with other positions with Defendant[.]" ECF No. 18-1 ¶ 23. Plaintiff also alleges that these "quarterly bonus payouts were based on sales," and that because of this, her "sales results were tracked weekly, monthly, and quarterly in determining quarterly sales bonuses and payouts[.]" *Id.* ¶ 7. "[A] bonus is a tangible, quantifiable award,

more analogous to one's salary or to a benefit of one's employment than to a performance evaluation." *Russell v. Principi,* 257 F.3d 815, 819–20 (D.C. Cir. 2001). Although, "[a]s a matter of law . . . the non-receipt of a discretionary bonus does not constitute an adverse employment action," *Schamann v. O'Keefe*, 314 F. Supp. 2d 515, 531 (D. Md. 2004) (retaliation claim); *see also Stoyanov v. Mabus*, No. 07-cv-1953-DKC, 2013 WL 1104978, at *10 (D. Md. March 15, 2013), "there might be circumstances under which this general rule should not be applied[.]" *Lawrence v. Geren*, No. 07-cv-3455-JFM, 2008 WL 4680566, at *1 (D. Md. Oct.17, 2008) (citing *Russell*, 257 F.3d at 819). As the D.C. Circuit noted, one circumstance warranting a departure from this general rule is where a plaintiff's bonus is directly tied to her performance rating, thus making it not truly discretionary. *See Russell*, 257 F.3d at 819 ("reject[ing] the notion that a denial of a monetary bonus is not a cognizable employment action under Title VII."). Here, Plaintiff has pled that her quarterly bonus payments (and yearly pay increases) were based on her sales, which necessarily implicates her performance ranking as an SSR. *See* ECF No. 18-1 ¶ 7. Thus, Plaintiff has sufficiently pled that her lost bonuses was an adverse employment action.

Plaintiff, through comparator analysis, also sufficiently alleges that she, along with female SSR Allen, was treated differently from similarly situated employees who are not female. *See Carter v. Maryland Aviation Admin.*, No. 04-cv-3065-CCB, 2005 WL 1075328, at *4 n.1 (D. Md. May 6, 2005) ("[i]dentifying one comparator [ ] who was treated more favorably may satisfy the prima facia test."). Specifically, she alleges that "Fell and Barna, two male SSRs with lower sales rankings than Plaintiff," received better treatment from Sun than she because they "were not issued unwarranted discipline, overly critiqued, or scrutinized or placed on PIPs, like Plaintiff." ECF No. 18-1 ¶ 22. Although Plaintiff also alleges that two Black males, White and Calloway, were also treated "more harshly" by Sun as compared to their lower-performing

Caucasian SSR counterparts, ECF No. 18-1 ¶ 45, Plaintiff alleges this with respect to her race discrimination claim, not her sex discrimination claim. Plaintiff does not have to choose between a race discrimination claim and a sex discrimination claim. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). Plaintiff has pled a prima facie case of sex discrimination. Accordingly, the Court grants Plaintiff's Motion for Leave to Amend, with respect to Count I, sex discrimination.[14]

### C.  Hostile Work Environment/Harassment (Count III)[15]

In the instant case, Plaintiff's proposed Second Amended Complaint alleges Defendant subjected her to a racially hostile work environment in violation of 42 U.S.C. § 1981. ECF No. 18-1 ¶¶ 31–41. Defendant argues that Plaintiff's hostile work environment claim does not survive because her "general and conclusory allegations that her supervisor discriminated against her 'by overly scrutinizing and criticizing her work performance,'" ECF No. 20 at 4, fall short of qualifying as "severe or pervasive" under the law. ECF No. 19 at 6.

A racially hostile working environment under Section 1981 is congruent with a hostile work environment claim under Title VII and exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-*

---

[14] Though Defendant does not contest the first two elements, the Court notes that Plaintiff sufficiently pled that she is in a protected class: female, ECF No. 18-1 ¶ 6, and that she performed her job satisfactorily because "she was also exceeding Defendant's sales goal by nine percent," *id.* ¶ 8.

[15] Because claims brought pursuant to § 1981 do not have to be exhausted administratively, Plaintiff's hostile work environment, constructive discharge and racial discrimination claims brought pursuant to § 1981 will be addressed on their merits. *Buntin v. City of Bos.*, 813 F.3d 401, 405 (1st Cir. 2015) (noting that Section 1981 "had no such exhaustion requirement" like Title VII).

*Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (alteration in original) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In the Fourth Circuit, a plaintiff "must clear a high bar in order to satisfy the severe or pervasive test." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (distinguishing actionable "hostile work environment" from mere "rude treatment by coworkers, . . . callous behavior by one's supervisor, . . . or a routine difference of opinion and personality conflict with [one's] supervisor" (internal citations and quotation marks omitted)). To prevail on a hostile work environment claim, the plaintiff "must show that there is (1) unwelcome conduct; (2) that is based on plaintiff's race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto*, 786 F.3d at 271 (ellipsis omitted) (citation omitted). Courts evaluating whether a complaint has stated a plausible hostile work environment claim must consider "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011) (internal quotations and citation omitted). Further, the Fourth Circuit has established that allegations involving "actions taken against [a plaintiff] in response to the concerns regarding her performance fall well short of alleging an abusive working environment." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

    Plaintiff's allegations here, while seemingly unpleasant and unfair if credited, fail to support a hostile work environment claim. Plaintiff claims that "Defendant allowed Mr. Sun to hold [her] and other Black employees to a higher performance standard than their similarly

situated minority colleagues[,]" to "falsely accuse[] [her] of having performance issues," and "repeatedly issue[] false write ups . . . and threaten[] her with termination and place[] her on PIPs[.]" ECF No. 18-1 ¶ 36. This is tantamount to Plaintiff alleging that her supervisors took actions related to her performance, which the Fourth Circuit has made clear fails to clear the "high bar" required to satisfy the severe and pervasive test. *See Sunbelt Rentals, Inc.*, 521 F.3d at 315; *see also Graham v. Prince George's Cty.*, 191 F. App'x 202, 204–05 (4th Cir. 2006) (affirming district court's finding that "reprimands . . . regarding her performance and the harsh way in which [the supervisor] communicated (or refused to communicate) . . . reflected an unpleasant working environment, [but] did not support a hostile one[.]").

Plaintiff relies on *Strothers v. City of Laurel*, 895 F.3d 317 (4th Cir. 2018), to support her claim, ECF No. 17 at 18–19, but the allegations in Plaintiffs proposed Second Amended Complaint, ECF No. 18-1 ¶¶ 31–41, regarding Plaintiff's performance are not of the same caliber or severity of the plaintiff in *Strothers* where the plaintiff's direct supervisor "circled [her], lunged at her, and grabbed her pants without seeking permission" and "require[d] [her] to obtain permission to even relieve herself in the restroom." *Strothers*, 895 F.3d at 329. Because Plaintiff fails to allege that Defendant's conduct was "sufficiently severe or pervasive," her hostile work environment/harassment claim is futile. As such, the Court denies Plaintiff's Motion for Leave to Amend with respect to Count III, hostile work environment/ harassment.

## D. Constructive Discharge (Count VI)

A claim of constructive discharge arises when an employee resigns because the "circumstances of discrimination" made the employee's working conditions "'so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 136 S. Ct. 1769, 1779, 1776 (2016) (quoting *Pa. State Police v. Suders*, 542 U.S. 129,

147 (2004)). As such, to allege a claim for constructive discharge, a plaintiff must satisfy two elements: (1) that her working conditions were intolerable and (2) that she actually resigned because of those conditions. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211 (4th Cir. 2019) (citing *Green v. Brennan*, 136 S. Ct. 1769 (2016)) (internal quotations and citations omitted). Here, Defendant contests Plaintiff's ability to satisfy the intolerability requirement for the same reason as her now dismissed hostile work environment claim: Sun "criticiz[ing] and scrutiniz[ing] her work performance as compared to her Caucasian male colleagues with lower performance," ECF No. 18-1 ¶ 56, fails to meet the high bar required. *See Evans v. Int'l Paper Co.,* 936 F.3d 183, 193 (4th Cir. 2019) (reiterating that for constructive discharge, "the plaintiff must show 'something more' than the showing required for a hostile work environment claim") (citation omitted).

"Intolerability 'is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign,' ... that is, whether he would have had *no choice* but to resign." *Perkins*, 936 F.3d at 212 (quoting *Blistein v. St. John's Coll.*, 74 F.3d 1459, 1468 (4th Cir. 1996), *overruled on other grounds by Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998), *as recognized by Adams v. Moore Bus. Forms, Inc.*, 224 F. 3d 324, 327 (4th Cir. 2000) (internal citations omitted) (ellipses in original) (emphasis in original). Further, the Fourth Circuit has emphasized that, with respect to intolerability, "difficult or unpleasant working conditions . . . without more, are not so intolerable as to compel a reasonable person to resign." *Id.* Specifically, "mere '[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions'" are allegations that fail to reach a level sufficient to compel the resignation of a reasonable person. *See James v. Booz-*

17

*Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004) (quoting *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994)).

Because Plaintiff's virtually identical allegations of Sun "criticiz[ing] and scrutiniz[ing] her work performance as compared to her Caucasian male colleagues with lower performance," ECF No. 18-1 ¶ 56, "hound[ing] [Plaintiff] on a weekly basis," "singl[ing] her out for repeated disciplinary actions," and "paper[ing] her file with false discipline," *Id.* ¶ 57, fail to allege a viable hostile work environment claim, they cannot support Plaintiff's claim for constructive discharge. *See Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018) ("Having failed to show hostile conditions that were severe and pervasive, [plaintiff] cannot show that conditions . . . were intolerable."). But even on their own, Plaintiff's allegations are not objectively intolerable. They are the equivalent of Plaintiff feeling "unfairly criticized" and, at most, experiencing a "difficult or unpleasant working condition[]." *See James*, 368 F.3d at 378. None of these allegations are "so intolerable as to compel a reasonable person to resign." *See* ECF No 18-1 ¶ 58; *see also Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (affirming district court's dismissal of Title VII constructive discharge claim because plaintiff's allegations that her supervisors "yelled at her, told her she was a poor manager and gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back" were not objectively intolerable); *Munday v. Waste Mgmt. of N. Am.*, Inc., 126 F.3d 239, 244 (4th Cir. 1997) (affirming district court's finding that plaintiff "being ignored both by her co-workers and by the top supervisor" was insufficient to find plaintiff was constructively discharged). Accordingly, the Court denies Plaintiff's Motion for Leave to Amend with respect to Count VI, constructive discharge in violation of Section 1981.

### E. Race Discrimination (Count IV)

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). "Although Section 1981 does not explicitly use the word 'race,' the Supreme Court has construed the statute to ban all racial discrimination in the making of public and private contracts." *Nnadozie*, 730 F. App'x at 156 (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609, (1987)). "Thus, § 1981 bar[s] racial discrimination in the workplace." *Scott v. Lori*, No. 19-cv-2014-ELH, 2020 WL 3833129, at *21 (D. Md. July 8, 2020) (citing *See Yashenko v. Harrah's N.C. Casino Co., LLC*, 446 F.3d 541, 551–52 (4th Cir. 2006)).

Workplace race discrimination claims under § 1981 apply the Title VII *McDonnell Douglas* framework. *See Lightner v. City of Wilmington,* 545 F.3d 260, 263 n.* (4th Cir. 2008). While a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss[,]" *Woods v. City of Greensboro*, 855 F.3d 639, 647–48 (4th Cir. 2017), "the elements of a prima facie claim are helpful in analyzing the plausibility of the claim as alleged." *Brown v. Hous. Auth. of Baltimore City*, Civ. No. 16-cv-3616-MJG, 2017 WL 3189447, at *5 n.5 (D. Md. July 26, 2017). To state a prima facie claim of discrimination under Title VII [or Section 1981], a plaintiff must plausibly allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Here, Plaintiff's claims regarding race-based disparate treatment are sufficiently pleaded to survive dismissal and, thus, are not futile.  Plaintiff alleges that she is Black and that she was

"exceeding Defendant's sales goal by nine percent," so she satisfies the first two elements. ECF No. 18-1 ¶¶ 6, 8. Plaintiff also satisfies the third element, adverse employment action, because this Court has already found that, as pled here, lost bonuses are a loss of benefit and therefore an adverse employment action. *See infra* § III.B. With respect to the fourth element, Plaintiff specifically alleges that Sun did not overly scrutinize or criticize the performance of the two Caucasian male SSRs, Barna and Fell, who were under his supervision though they "had far lower sales and sales rankings than Plaintiff." ECF No. 18-1 ¶ 10. Plaintiff also alleges that Sun "issued unwarranted disciplinary action to her," unlike Barna and Fell, who failed to meet their sales quotas. *Id.* ¶¶ 44, 46. Moreover, Plaintiff alleges that, on information and belief, "Fell was not placed on a PIP like Plaintiff even though he was not meeting the sales quota" set by Defendant for SSR employees.[17] *Id.* Plaintiff has plead that "but for [her] race, Mr. Sun would not have treated her less favorably than Barna and Fell, both of whom had lower sales than Plaintiff." *Id.* ¶ 44.

In sum, Plaintiff has done more than make a "bare, conclusory allegation that similarly situated individuals were treated differently." *Acosta v. Ingerman & Horwitz, L.L.C.*, No. 14-cv-1605-WDQ, 2015 WL 795108, at *5 (D. Md. Feb. 24, 2015). Rather, Plaintiff has pled "sufficient facts showing the more favorably treated co-workers were true comparators in that the co-workers held the same position, performed the same work, and were supervised by the same individuals as Plaintiff." *See Sillah v. Burwell*, 244 F. Supp. 3d 499, 513 (D. Md. 2017); *see also Grant v. Atlas Rest. Grp., LLC*, No. 20-cv-2226-GLR, 2021 WL 2826771, at *3 (D. Md.

---

[17] Plaintiff also alleges several additional instances of disparate treatment by Sun towards other Black SSR employees who he supervised. Plaintiff specifically identifies employee Krystle Allen, and former employees, William White and Brian Calloway. ECF No. 18-1 ¶¶ 17, 45. These Black employees, who Plaintiff contends were meeting sales goals, were also "overly scrutinized and criticized" for their performances and employees White and Calloway, specifically, were "subsequently discharged or constructively discharged[.]" *Id.* ¶ 45.

July 7, 2021) (finding that plaintiff's Section 1981 claim survives motion to dismiss where plaintiff satisfied "but-for" standard by pleading similarly situated comparator); *Acosta*, 2015 WL 795108, at *4  (granting motion to amend where Plaintiff sufficiently pleaded similarly situated employees). For these reasons, the proposed Second Amended Complaint gives rise to a reasonable inference that, but for her race, Plaintiff would not have been subjected to race-based disparate treatment. Accordingly, the Court grants Plaintiff's Motion for Leave to Amend with respect to Count IV, race discrimination.

### F.   Race-Based Retaliation (Count V) and Sex-Based Retaliation (Count II)

Title VII prohibits discrimination against an employee because, in relevant part, she "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). Title 20 of the MFEPA is the "state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII." *Finkle v. Howard Cnty., Md.*, 12 F. Supp. 3d 780, 784 (D. Md. 2014) (citing *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 914 A.2d 735, 742 (2007)). Section 1981 also "encompasses retaliation claims" for opposing racial discrimination in employment. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (citing *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008)). "To establish a prima facie case of retaliation in contravention of Title VII and [Section 1981], a plaintiff must prove '(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Id.* (quoting *EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405–06 (4th Cir. 2005)); *Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004) (prima facia retaliation claim under Section 1981 has the same elements as Title VII retaliation claim). Plaintiff has satisfied

her pleading burden at this stage of the litigation for her retaliation claim under Section 1981 and her sex-based retaliation claim under Title VII and MFEPA § 20-606.

With respect to element one, "an employee opposes race discrimination when she 'communicates to her employer a belief that the employer has engaged in' such discrimination." *Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 172 (4th Cir. 2020) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009)). Further then, "an employee is protected when she opposes not only … employment actions actually unlawful under Title VII [and § 1981] but also employment actions [she] reasonably believes to be unlawful." *Boyer-Liberto*, 786 F.3d at 282 (internal citation and quotations omitted) (ellipses in original). Here, Plaintiff alleges that she engaged in a "protected activity" when she spoke with Defendant's HR in or around October 2019 and "stated that Mr. Sun was discriminating against her because of her race and gender" by "criticizing her work performance as compared to her Caucasian male employees and placing her on a PIP for false reasons." ECF No. 18-1 ¶ 12; *see also id.* ¶¶ 27–28, 51. This is sufficient to satisfy the first element of the claim.

The standard for an adverse employment action in a retaliation claim is more lenient than for a substantive discrimination claim. *See Burlington N. & Santa Fe Ry. Co. v. White.*, 548 U.S. 53, 64 (2006). Specifically, "retaliatory actions need not 'affect the terms and conditions of employment[.]'" *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018) (quoting *Burlington,* 548 U.S. at 64). Rather, a plaintiff can satisfy the second element by "show[ing] that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *See Evans v. Int'l Paper Co.,* 936 F.3d 183, 195 (4th Cir. 2019) (quoting *Burlington*, 548 U.S. at 68).

To establish the second element of her prima facia case for both her Title VII sex-based retaliation claim and her § 1981 race-based retaliation claim, Plaintiff essentially puts forth the same factual allegations. Plaintiff alleges that after Sun met with HR and learned of her October 15, 2019 complaint, Sun engaged in three kinds of adverse actions against her including: (1) placing Plaintiff on probation and giving her "unwarranted disciplinary actions," (2) taking away her bonus opportunity on or about October 16, 2019, which made her ineligible to apply for vacancies or promotions with Defendant, and (3) increasing his scrutinization of her performance and giving her a poor performance evaluation. ECF No. 18-1 ¶¶ 13, 28–29, 51; *see also* ECF No. 17 at 15. Plaintiff succeeds on this element for the same reason she establishes an adverse employment action under the more stringent standard for discrimination in Count I. Additionally, the fact that she was placed on probation the day after she complained about Sun is sufficient to establish a causal link between the two events.

Accordingly, the Court grants Plaintiff's Motion for Leave to Amend with respect to Count V, retaliation, and Count II, sex-based retaliation.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Leave to Amend, ECF No. 18, is granted in part, and denied, in part. Specifically, Plaintiff's motion is granted with respect to the sex discrimination claim (Count I), the race discrimination claim (Count IV) and the retaliation claims (Counts II and V) and denied with respect to all other claims (Counts III and V). Counts III and V are dismissed. A separate Order follows.

Date: <u>September 30 , 2021</u>            <u> /s/                                      </u>
                                                            GEORGE J. HAZEL
                                                            United States District Judge