IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TANJANEKA JONES, | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No. ADC-20-3564 |
| ELI LILLY AND COMPANY, | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM OPINION**

Defendant Eli Lilly and Company ("Defendant" or "Eli Lilly") moves this Court for summary judgment on Plaintiff Tanjaneka Jones's Third Amended Complaint. ECF Nos. 26, 48. After considering Defendant's Motion and the responses thereto (ECF Nos. 48, 51, 52, 55), the Court finds that no hearing is necessary.[1] Loc.R. 105.6 (D.Md. 2021). For the reasons stated herein, Defendant's motion for summary judgment is GRANTED.

**Factual Background**

Plaintiff is a Black woman who was hired as a senior sales representative at Eli Lilly in 2014. ECF No.. 48-2 at 29.[2] She was originally assigned to the Baltimore District of Eli Lily's Diabetes Business Unit where she was responsible for selling diabetes related products to physicians. *Id.* at 31-32. 51-52. Plaintiff received a base salary for her role and was also eligible for additional incentive compensation through Eli Lilly's Premier Regards Program. *Id.* at 191-93;

[1] On March 2, 2023, this case was referred to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 (D.Md. 2021). ECF No. 59.

[2] ECF No. 48-2 is a condensed copy of Plaintiff's deposition with four pages of deposition testimony printed to one page. Citations in this Opinion correspond to the deposition page number.

ECF No. 51-4.

Plaintiff was originally supervised by Harald Mendoza, a White or Hispanic male. ECF No. 48-2 at 52, 55. In December of 2015, during Plaintiff's first full year at Eli Lilly, Mr. Mendoza issued Plaintiff a written warning for deficient performance. *Id.* at 56-57. Plaintiff was, in Mr. Mendoza's opinion, failing to "consistently engage customers in a meaningful selling dialogue including using active listening skills, asking effective questions and demonstrating agile communications skills." *Id.* at 57. Given these issues, and others, he concluded that Plaintiff did not sufficiently meet her job expectations in 2015. *Id.* at 64-65. This was, however, the only disciplinary warning that Plaintiff received under Mr. Mendoza's supervision, and she subsequently received a satisfactory performance rating in 2016. *Id.* at 66. In July 2017, Andrea Gibson—a Black female—replaced Mr. Mendoza. *Id.* Under Ms. Gibson's supervision, Plaintiff received a satisfactory performance rating in 2017. ECF No. 51-2 at 1.

As part of a company realignment, Plaintiff was transferred to the Washington D.C. District of the Diabetes Business Unit in February 2018 where she was supervised by Jacquelyne Porter—a Black female. ECF No. 52 at 68-69.[3] Shortly after her transfer, Plaintiff went out on maternity leave for three months. ECF No. 51-2 at 2. Although she briefly returned to work in June 2018, Plaintiff had to take medical leave in July 2018 for emergency neck surgery. *Id.* After nearly seven months of leave, Plaintiff returned to Eli Lilly on October 3, 2018. ECF No. 51-2 at 2. Once Plaintiff was back in the sales force, Ms. Porter noticed several performance deficiencies related to Plaintiff's value-based selling and pre-call planning. ECF No. 48-2 at 70. Based on these performance inadequacies, Ms. Porter rated Plaintiff's 2018 performance as "not sufficiently

[3] ECF No. 52 is a condensed copy of Plaintiff's deposition with four pages of deposition testimony printed to one page. Citations in this Opinion correspond to the deposition page number.

meeting job expectations." *Id.* at 71. To spark improvement, Ms. Porter set up weekly check-in meetings with Plaintiff and advised her to "invest more time and practice in reviewing studies and data." *Id.* at 70-71.

In February 2019, Mark Hudson became the interim supervisor of Plaintiff's team. ECF No. 52 at 74. Prior to assuming this position, Mr. Hudson was the Mid-Atlantic sales trainer for Eli Lilly's Diabetes Business Unit. *Id.* at 75. In his training roll, Mr. Hudson accompanied Plaintiff on a field ride and trained her in value-based selling. *Id.* at 76, 126. In the months after assuming his new supervisory responsibilities, Mr. Hudson completed two additional field rides/visits with Plaintiff during which he—like Ms. Porter—noticed that Plaintiff's pre-call planning and value-based selling were inadequate. ECF No. 48-2 at 127-32. To correct these deficiencies, Mr. Hudson sent Plaintiff Eli Lilly training literature reenforcing the processes and procedures that sales representatives were expected to adhere to. *Id.* Despite these efforts, Plaintiff's performance in these areas did not improve. Consequently, in May 2019, Mr. Hudson informed Plaintiff that she would be receiving a Performance Improvement Plan ("PIP"). *Id.* at 140. Mr. Hudson was, however, ultimately replaced before the PIP was issued. *Id.*

On June 1, 2019, David Sun took over as the supervisor of Plaintiff's team. *Id.* at 77. During his first month on the job, Mr. Sun accompanied Plaintiff on a field ride and, like Ms. Porter and Mr. Hudson, observed gaps in Plaintiff's pre-call planning and customer facing abilities. ECF No. 48-3 at 1. Due to her "trend of unacceptable performance," Plaintiff was issued a PIP by Mr. Hudson and Mr. Sun on June 28, 2019. *Id.* This disciplinary action was taken despite Plaintiff exceeding her sales goals. ECF No. 26 at ¶ 8. The PIP specifically identified the following performance inadequacies: "[i]nadequate pre-call planning which has led to ineffective discussions with customers, lack of impact and influence during customer interactions"; "[l]ack of technical

knowledge of disease state"; "[i]nability to achieve consistently effective call progression and consistent sales results"; and "[l]ack of demonstrated team leadership at an S3 level." *Id.* Plaintiff was required to meet the following performance management goals to complete the PIP: adhere to value-based selling based on a structured pre-call plan; show sufficient technical knowledge on disease state with customers; conduct efficient dialogue with customers; and conduct monthly communications with her district. *Id.* at 3. Failure to meet these goals could "lead to further disciplinary action." *Id.*

After receiving the PIP, Plaintiff met regularly with Grace Faulkner, a member of the human resources office at Eli Lilly. ECF No. 48-2 at 89. In August 2019, Plaintiff reported to Ms. Faulkner that Mr. Sun was not accurately documenting her performance as he only documented interactions where she "had a slight error, or [] didn't show something properly." ECF No. 52 at 110. She also expressed that Mr. Sun was discrediting her accomplishments, such as her "strong sales record and client relationships." ECF No, 51-2 at 4. Two months later, Plaintiff reported that Mr. Sun was discriminating against her on the basis of her sex and race. ECF No. 52 at 96. She alleged that Mr. Sun's management style was abusive, demeaning, and upsetting. *Id.* at 97. She specifically recalled that Mr. Sun accused her of being "overemotional" and that he dismissed her questions but answered identical questions posed by her white colleagues. *Id.* at 96-98.

Based on Plaintiff's allegations of discrimination, Ms. Faulkner immediately opened an investigation into Mr. Sun's conduct. ECF No. 48-2 at 106. As part of this investigation, Ms. Faulkner interviewed five female members of Plaintiff's team as well as Mr. Sun's supervisor. ECF No. 48-5 at 58.[4] While Plaintiff's teammates described Mr. Sun's management style as

[4] ECF No. 48-5 is a condensed copy of Ms. Faulkner's deposition with four pages of deposition testimony printed to one page. Citations in this Opinion correspond to the deposition page number.

"different," none of them accused him of race or sex discrimination. ECF No. 51-7 at 2-4. Additionally, Mr. Sun's supervisor explained that he was "doing exactly what she's been asking him to do which is to add more structure to the team and hold people accountable (where they may not have been held accountable before)." *Id.* at 4. Based on these interviews, Ms. Falkner deemed Plaintiff's complaints unfounded. *Id.* at 1.

The day after Plaintiff reported this discriminatory conduct, Mr. Sun placed her on a three-month probationary period for her "unacceptable performance since being put on a [PIP]." ECF No. 48-4 at 1. Mr. Sun explained that Plaintiff had failed to: "provide positive customer experiences"; "pre-call plan efficiently within the VSB model"; "achieve adequate call progression"'; and "complete administrative deliverables in a timely manner." *Id.* at 1-5. As a consequence of this disciplinary action, Plaintiff would be "deemed as not sufficiently meeting expectations for performance for 2019" and was "ineligible for a base pay increase, promotional consideration, and Total Equity Program grant" as well as "any Incentive Pay under the Premier Rewards Plan." *Id.* at 4-5.

On November 1, 2019, Plaintiff contacted Stephanie Long—another member of the human resources office at Eli Lilly—to report that Mr. Sun was discriminating against her based on her race and sex and was retaliating against her for reporting his behavior. ECF No. 52 at 212. Plaintiff's allegations were ultimately brought to a human resources supervisor, Richard Ruth. *Id.* at 212-13. In her interview with Mr. Ruth, Plaintiff reported that Mr. Sun was not fair and balanced in his feedback, was abusive and dismissive towards women, and was racially discriminatory toward Black employees. ECF No. 51-11 at 3-5. To investigate these claims, Mr. Ruth interviewed William White and Krystal Allen, two Black members of Mr. Sun's team whom Plaintiff alleged were similarly discriminated against. *Id.* at 6; ECF No. 48-2 at 214. Mr. White expressed that there

was "a cultural clash between management and the team" and that Mr. Sun did not respect the sales representatives. ECF No. 51-11 at 6. He went on to say that, in his view, it was "50/50" whether Mr. Sun was targeting Black employees. *Id.* However, he later clarified that Mr. Sun's behavior was "not about race" but more about Mr. Sun's "leadership and how he runs the team like a dictatorship." *Id.* Ms. Allen similarly explained that, while Mr. Sun was a micromanager, she did not believe that he was targeting Black members of the team. *Id.* at 7.

While Mr. Ruth's investigation was ongoing, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging that she had been discriminated against based on her sex and retaliated against for engaging in protected activity. ECF No. 12-2. After filing this charge, Plaintiff alleged that the frequency and intensity of Mr. Sun's discrimination and retaliation escalated, making the workplace feel "more and more hostile because she was being disciplined for false reasons." ECF No. 18-1 at ¶ 15. Plaintiff ultimately resigned her employment at Eli Lilly on December 5, 2019, after learning that the company was investigating her for compliance related violations. ECF No. 52 at 193-94.

**<u>Procedural Background</u>**

Plaintiff filed a Complaint in the Circuit Court for Prince George's County on or around February 28, 2020. ECF No. 23 at 5. She subsequently filed an Amended Complaint on October 21, 2020. ECF No. 3. Defendant removed the action to this Court on December 9, 2020. ECF Nos. 1-6. On January 29, 2021, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 12. Plaintiff filed a Response in Opposition, Motion for Leave to Amend, and proposed Second Amended Complaint on March 11, 2021. ECF No. 18. Plaintiff's proposed Second Amended Complaint alleged Sex Discrimination in violation of Title VII and Maryland Code, State Government Article, § 120-606 (Count I); Sex Based Retaliation in violation of Title VII and

Maryland Code, State Government Article, § 120-606 (Count II); Hostile Work Environment/Harassment in violation of 42 U.S.C. § 1981 (Count III); Race Discrimination in violation of 42 U.S.C. § 1981 (Count VI); Retaliation in violation of 42 U.S.C. § 1981 (Count V); and Constructive Discharge based on race and/or sex in violation of Title VII and 42 U.S.C. § 1981 (Count VI). ECF No. 18-1. Defendant filed its Reply and Opposition to Plaintiff's Motion for Leave to Amend on March 25, 2021. ECF Nos. 19, 20.

On September 30, 2021, this Court granted in part and denied in part Defendant's Motion to Dismiss and granted in part and denied in part Plaintiff's Motion for Leave to Amend. ECF Nos. 23, 24. The Court dismissed Count III, finding that Plaintiff had not sufficiently alleged that Defendant's conduct was "severe or pervasive." *Id.* at 16. The Court also dismissed Count VI, finding that Plaintiff failed to allege a viable constructive discharge claim. *Id.* at 18. Plaintiff was, however, granted leave to amend Counts I, II, IV, and V. *Id.* at 11-14, 19-23.

Plaintiff filed a Third Amended Complaint on October 13, 2021. ECF No. 26. This Complaint alleged the following counts: Sex Discrimination in violation of Title VII and the Maryland Fair Employment Practices Act ("MFEPA"), Maryland Code, State Government Article, § 20-606 (Count I); Sex Retaliation in violation of Title VII and the MFEPA (Count II); Race Discrimination in violation of 42 U.S.C. § 1981 (Count III); and Retaliation in violation of 42 U.S.C. § 1981 (Count VI). *Id.*

Defendant filed the instant Motion for Summary Judgment on October 12, 2022. ECF No. 48. Plaintiff Responded in Opposition on November 23, 2022. ECF No. 51. Defendant Replied on December 21, 2022. ECF No. 55.

## DISCUSSION

### A. Standard of Review

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. See Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party, and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322-24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

**B. The Race and Sex Discrimination Claims (Counts I & III)**

Defendant first argues that it is entitled to summary judgment on Plaintiff's sex and race discrimination claims brought under Title VII, the MFEPA and 42 U.S.C. § 1981. ECF No. 48-1 at 12-16. Discrimination claims brought under Title VII, § 1983, and the MFEPA are analyzed under the same standards. *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004); *Hawkins v. Leggett*, 955 F.Supp.2d 474, 496-97 (D.Md. 2013). To survive summary judgment on these claims, "a plaintiff must either proceed under the mixed-motive framework or the *McDonnell Douglas* burden-shifting framework." *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 649 (4th Cir. 2021) (citing *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 206 n.4 (4th Cir. 2014)). Here, Plaintiff has chosen to proceed under the *McDonnell Douglas* burden-shifting framework. ECF No. 51 at 13.

Under the burden-shifting framework, a plaintiff must first offer a prima facie case of discrimination. *Sempowich*, 19 F.4th at 649. A plaintiff may do so by showing: (1) membership in a protected class; (2) satisfactory job performance; (3) that her employer took an adverse action against her; and (4) that she was treated differently from similarly situated employees outside the protected class. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 626 n.8 (4th Cir. 2020); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Once the plaintiff makes this initial showing, "the burden shifts to the employer to put forth a nondiscriminatory explanation for its actions." *Sempowich*, 19 F.4th at 650 (citing *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007)). If the defendant does so, "the burden then shifts back to the plaintiff to show that the employer's explanation was 'actually a pretext for discrimination.'" *Id.* (quoting *Lettieri*, 478 F.3d at 646).

Here, Defendant does not contest that, as a Black female, Plaintiff is a member of a protected class. ECF No, 48-1. Defendant does, however, argue that Plaintiff cannot make the

requisite showing on the second, third, and fourth prong of the prima facie case. ECF No. 48-1 at 12-15. For the reasons explained below, the Court finds that Plaintiff has not successfully alleged that she was satisfactorily performing her job or that she was disciplined more severely than other similarly situated employees outside of the protected class. Accordingly, Plaintiff cannot make out a prima facie case of discrimination.

i. Satisfactory Job Performance

Defendant first argues that Plaintiff cannot establish that she was satisfactorily performing her job as she "received coaching and criticism for the same performance deficiencies by four different supervisors . . . over a five-year period." ECF No. 48-1 at 12-13. To establish the satisfactory job performance element of a prima facie case, a plaintiff must show that she was "performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). "Generally, in evaluating whether a plaintiff has met the legitimate expectations of her employer, '[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'" *Rodgers v. Eagle Alliance*, 586 F.Supp.3d 398, 438 (D.Md. 2022) (quoting *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)). A plaintiff need not "show that [s]he was a perfect or model employee." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019). Moreover, a plaintiff may introduce "evidence that demonstrates (or at least creates a question of fact) that the proffered 'expectation' is not, in fact, legitimate at all." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 517 (4th Cir. 2006).

Plaintiff here argues that she was meeting Eli Lilly's performance expectations as she was reaching and exceeding her sales quota. ECF No. 51 at 17. The Court initially notes that Plaintiff

submits scant evidence demonstrating that she was achieving her sales quota.[5] However, even if this assertion was properly supported, Defendant has introduced evidence that meeting the requisite sales quota was but one of many duties Plaintiff was expected to perform as a Senior Sales Representative. Indeed, Plaintiff agreed during her deposition that she was expected to perform all of the following functions:

- Understand—"Understands the healthcare marketplace; the payer environment; customer (account and stakeholder) priorities; patient, product and money flows; patient disease states and therapeutic options; and Lilly resources, processes, policies and procedures."
- Plan—"Analyzes patient, product and monetary flows; prioritizes opportunities; builds territory and account plans; and secures needed resources."
- Execute—"Executes territory and account plans; achieves territory and account plan goals and completes actions on a timely basis; and regularly assesses and adjusts territory and account plans as needed."

ECF No. 48-2 at 39-40. In light of this array of expectations, the Court finds that achievement of Plaintiff's sales quota was necessary but not sufficient to meet Defendant's legitimate job expectations. More importantly, Plaintiff has not offered evidence showing that she was satisfactorily performing these other job functions. This omission is especially problematic given that *all* of Plaintiff's disciplinary violations relate to her deficient planning and communications skills—not the failure to achieve the requisite sales quota.

Plaintiff also argues that Mr. Sun used subjective criteria to falsely evaluate her performance. ECF No. 51 at 17-19. I disagree. To the contrary, Mr. Sun included in Plaintiff's PIP and Notice of Probation concrete and specific performance deficiencies that he heard about or personally observed. ECF No. 48-4. For example, he notes that the staff at the Maryland Primary

---

[5] In support of this assertion, Plaintiff offers only her own affidavit in which she alleges that "her sales were the second highest in the Washington, DC, team district." ECF No. 51-2 at 3. This is, however, unhelpful as a Plaintiff's "own testimony . . . cannot establish a genuine issue as to whether [a plaintiff] was meeting [their employer's] expectations." *See King*, 328 F.3d at 149.

Care/Arnold office "brought up to [him] a lunch that was cancelled" by Plaintiff and that he witnessed Plaintiff neglect several provisions of the "Global SR Competency Model" during their field rides. *Id.* at 3-4. Mr. Sun also developed five specific performance management goals to ensure that Plaintiff's performance improved. *Id.* Among other things, he explained that Plaintiff was "expected to develop [a] pre-call plan that is customer centric, sequential and anticipates customer needs, concerns and outcomes of the call." *Id.* at 3. Considering the detailed nature of Plaintiff's disciplinary reprimands, the Court finds that Mr. Sun's criticisms are not too subjective to be considered at the prima facie stage. *See Warch*, 435 F.3d at 517-18 (reasoning that an employer's criticisms were not too subjective when they were based on "concrete, specific observations and accompanied . . . with explicit instructions on how to improve").

In sum, Plaintiff has not offered facts to show that she was satisfactorily performing *all* or even *most* of her legitimate job expectations. Moreover, Defendant has introduced *undisputed facts* that, over her five-year tenure with the company, multiple supervisors—of different genders and races—found that she was not satisfactorily meeting performance expectations. This is evidenced by her written warning, PIP, Notice of Probation, and three unsatisfactory performance ratings. ECF Nos. 48-2 at 56-57; 48-3; 48-4; 52 at 127-32. When evidence of a plaintiff's deficient performance is presented, it is not this Court's role "to sit 'as a kind of super-personnel department weighing the prudence of employment decisions.'" *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Accordingly, the Court finds that there is no genuine dispute of material fact as to this element of Plaintiff's discrimination claim.

ii. <u>Adverse Employment Action</u>

Defendant next argues that Plaintiff did not suffer an adverse employment action because

she resigned prior to experiencing the "tangible consequences" of her probationary term. ECF No. 48-1 at 14. I disagree. The United States Court of Appeals for the Fourth Circuit has explained that "[a]n adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). Adverse actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, *or reduced opportunities for promotion*." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999) (emphasis added). Here, Plaintiff's Notice of Probation made her ineligible for, among other things, "promotional consideration." ECF No. 48-4 at 4-5. Plaintiff therefore worked without the possibility of promotion from the date she received the Notice of Probation through the date that she resigned. Accordingly, the Court finds that she has sufficiently alleged an adverse employment action.

iii. Disparate Treatment

Finally, Defendant argues that "Plaintiff was treated the same as employees outside her protected classes." ECF No. 48-1 at 14, "Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination . . . '[t]he similarities between comparators . . . must be clearly established to be meaningful.'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 Fed.App'x 745, 748 (4th Cir. 2017) (quoting *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)). "In the employee discipline context, a prima facia case of discrimination is established if the plaintiff shows that [she] 'engaged in prohibited conduct similar to that of a person of another race [or sex] . . . and . . . that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person.'" *Kelley v. U.S. Parcel Serv., Inc.*, 528 Fed.App'x 285, 286 (4th Cir. 2013) (quoting *Moore v. City*

*of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985)).

Plaintiff provides specific evidence of only one comparator, a white male sales representative named Brandon Fell. ECF No. 51 at 18-20. She argues that Mr. Fell received preferential treatment as Mr. Sun gave him a satisfactory performance rating in 2019 despite serious performance deficiencies. ECF No. 51-12. The Court is, however, dubious of this comparison as Plaintiff has not introduced evidence suggesting that she and Mr. Fell were reprimanded for the same or similar conduct. For example, while Plaintiff was consistently disciplined for her deficient pre-call planning skills, Mr. Fell was noted as having "good customer facing skills" and a "systematic approach for pre-call planning which enabled [his] understanding of customer needs." *Id.* at 4. Mr. Fell was, instead, disciplined for, among other things, using unapproved electronic resources and failing to utilize all promotional materials. ECF No. 48-6. These differentiating circumstances leave the Court unable to determine whether any disciplinary disparity is attributable to Plaintiff's sex/race or simply the differences in Mr. Fell's actionable conduct.

Even if Mr. Fell was deemed a proper comparator, Plaintiff has failed to show she was disciplined more severely. Just three months after Mr. Fell was given a satisfactory rating, Mr. Sun issued him a "Written Warning for Violation" of various Eli Lilly policies and procedures. ECF No. 48-6 at 1. In her deposition, Ms. Faulkner explained that at some point after Plaintiff resigned, the Company eliminated "probation" from its disciplinary structure and replaced it with "final written warning." ECF No. 51-8 at 20. Accordingly, despite the difference in title, there is no material difference between Plaintiff's "Notice of Probation" and Mr. Fell's "Written Warning for Violation." Indeed, much of the language explaining the consequences of the disciplinary actions is repeated verbatim in both documents. Like Plaintiff's "Notice of Probation," Mr. Fell's "Written

Warning for Violation" required that he be deemed "as not sufficiently meeting expectations for performance" and assigned him specific performance management goals. ECF No. 48-6 at 2-3. Accordingly, while there are differences in the specific terms of the disciplinary documents, the Court finds that Mr. Fell and Plaintiff were both disciplined and that there is no evidence that Mr. Fell was treated more favorably. Therefore, Plaintiff has failed to generate a genuine dispute of material fact on this element of her discrimination claim.

Because Plaintiff has failed to show that she was satisfactorily performing her job and that other employees outside of the protected class were treated more favorably, she has failed to make out a prima facie case of discrimination.

iv. Legitimate Nondiscriminatory Reason & Pretext

Even if Plaintiff could establish a prima facie case, she has failed to rebut Defendant's legitimate, non-discriminatory reason for placing her on probation: namely, her unsatisfactory performance. As explained above, Plaintiff's performance deficiencies were documented by four different supervisors of various genders and races (including a Black female) over a five-year span. Plaintiff has failed to rebut this evidence by showing that she *was in fact* satisfactorily performing the functions of her job or that other similarly situated employees were more leniently disciplined for similar violations. Accordingly, Plaintiff has failed to show that Defendants proffered non-discriminatory reason is "false" or "unworthy of credence" and therefore, pretextual. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (Pretext can be proven "by showing that the explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of" race/sex discrimination (citation omitted)); *see also King*, 328 F.3d at 152 (explaining that the plaintiff's comparator pretext argument fails because he did not "present

the first form or proof . . . testimony that the administrators believed the two teachers were similarly situated in the relevant respect").

For all these reasons, the Court finds that summary judgment in favor of Defendant is appropriate as to Counts I & III.

**C. The Retaliation Claims (Counts II & IV)**

Defendant further argues that it is entitled to summary judgment on Plaintiff's retaliation claims brought under Title VII, the MFEPA, and 42 U.S. C. § 1981. ECF No. 48-1 at 16-18. Plaintiff's retaliation claims are all analyzed under the same standard. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015); *Lowman v. Md. Aviation Admin.*, No. JKB-18-1146, 2019 WL 133267, at *4 (D.Md. Jan. 8, 2019) ("[C]ourts judge discrimination and retaliation claims brought under MFEPA by the same standards as those same claims brought under Title VII."). As with discrimination claims, "[t]he series of proofs and burdens outlined in *McDonnell Douglas* apply to retaliation claims." *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998). To make out a prima facie case of retaliation, a plaintiff must prove three elements: (1) "that she engaged in a protected activity"; (2) "that her employer took an adverse employment action against her"; and (3) "that there was a causal link between two events." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005).

i. The Prima Facia Case

In the instant case, Defendant does not dispute that Plaintiff engaged in protected activity when she reported Mr. Sun's behavior to Ms. Faulkner. *See Roberts v. Glen Indus Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) ("Complaints raised through internal company procedures are recognized as protected activity."). And, as explained above, restricting Plaintiff's promotional opportunities constitutes an adverse employment action. *See Burlington Northern & Santa Fe Ry.*

*Co. v. White*, 548 U.S. 53, 67-68 (2006) (In the context of retaliation, any action which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" constitutes an adverse employment action (cleaned up)). Accordingly, to make out a prima facie case of retaliation Plaintiff need only show that her placement on probation was causally connected to her engaging in protected activity.

The United States Court of Appeals for the Fourth Circuit has held that "establishing a 'causal relationship' at the prima facia stage is not an onerous burden." *Strothers v. City of Laurel,* 895 F.3d 317, 335 (4th Cir. 2018). "An employee may establish prima facia causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Id.* at 335-36; *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 654 (4th Cir. 2021) ("[T]emporal proximity suffices to show a causal relationship."). When a plaintiff relies on the temporal proximity between an employer's knowledge of protected activity and an adverse employment action, "the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (noting that a gap of two months and two weeks between protected activity and an adverse action did "not undercut the inference of causation enough to render [the plaintiff's] prima facie claim unsuccessful.").

Here, Defendant argues that Plaintiff did not complain about Mr. Sun's behavior until after she was informed that she would be placed on probation. ECF No. 48-1 at 17. Not so. Plaintiff has submitted evidence that she first accused Mr. Sun of fabricating false performance reviews in August 2019, two months before she was ultimately placed on probation. ECF No. 52 at 110-11. She also alleges that Ms. Faulkner kept Mr. Sun apprised of her complaints and that the two were

"conspiring . . . to get her discharged." *Id.* at 113, 186. While there is no evidence of "conspiracy," there are facts to support Ms. Faulkner's integral involvement in drafting, presenting, and executing Plaintiff's PIP and Notice of Probation. ECF Nos. 52 at 82-83, 171-72; 51-14. Based primarily on the timing of the events, the Court finds that Plaintiff has established prima facia causation, although causation is dubious at best.

ii. Non-Retaliatory Reason & Pretext

Assuming, based upon the timing of these events, that Plaintiff has established a prima facie case of retaliation, the burden shifts back to Defendant to "articulate a lawful, non-retaliatory reason for the adverse employment decision." *Shaffer v. ACS Gov. Servs., Inc.*, 454 F.Supp.2d 330, 335-36 (D.Md. 2006). Here, as explained above, Defendant has done so by detailing Plaintiff's extensive history of unsatisfactory performance. ECF No. 48-1 at 18. Accordingly, "the burden shifts back on the plaintiff to establish that the proffered explanation is pretextual." *Shaffer*, 454 F.Supp.2d at 336. At this stage, Plaintiff "faces a heavier burden than [she] did at the prima facie stage." *Marley v. Kaiser Permanente Found. Health Plan*, No. PWG-17-1902, 2021 WL 927459, at 8 (D.Md. March 11, 2021). To meet her burden, Plaintiff "must establish 'both that the [employer's] reason was false and that [retaliation] was the real reason for the challenged conduct.'" *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)).

In support of her pretext claim, Plaintiff argues that Mr. Sun fabricated false and misleading performance evaluations.[6] ECF No. 51 at 23. This argument is, however, undermined by the great

[6] The Court notes that Plaintiff does not clearly argue that Defendant's stated *non-retaliatory* reason for placing her on probation was pretextual. Indeed, the majority of her pretext arguments address Defendant's "*nondiscriminatory reason*" for placing her on probation. ECF No. 51 at 22 (emphasis added).

deal of evidence showing that Plaintiff's performance deficiencies began well before Mr. Sun took over as her supervisor. Indeed, Mr. Mendoza, Ms. Porter, and Mr. Hudson all found Plaintiff's performance to be deficient in the same critical areas that Mr. Sun did. Moreover, as explained above, Plaintiff has not rebutted Defendant's evidence with competing evidence that she was satisfactorily performing the functions of her job on a consistent basis. Without such evidence, Plaintiff cannot show that Defendants non-retaliatory reason—her poor performance—is false and therefore pretextual.

Plaintiff has further failed to demonstrate that her participation in protected activity—as opposed to her deficient job performance—led to Mr. Sun placing her on probation. Here, Defendant has introduced undisputed facts that Plaintiff's supervisors took actions to correct her deficient performance well before she engaged in protected activity. *Francis v. Booze Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d. Cir. 2001))). In particular, Ms. Porter rated Plaintiff's performance as insufficient *more than six months* before she engaged in protected activity, Mr. Hudson informed Plaintiff that she would be placed on a PIP *approximately three months* before she engaged in protected activity, and Mr. Sun noted Plaintiff's performance deficiencies *approximately two months* before she engaged in protected activity. *See* ECF Nos. 48-2 at 71, 140; ECF No. 48-3 at 1. This pattern of gradual adverse job actions suggests that placing Plaintiff on probation was simply the rational consequence of Plaintiff failing to complete the PIP. Accordingly, the Court finds that Plaintiff has not proven that her engaging in protected activity was the but-for cause of her placement on probation. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*,

570 U.S. 338, 351 (2013) ("Title VII retaliation claims must be proved according to the traditional principles of but for causation.").

For these reasons, the Court finds that there are no genuine disputes of material fact that have been raised. On this record, a reasonable juror could not conclude that Defendant's stated reason for terminating Plaintiff, namely her poor performance, was pretextual. As the Fourth Circuit has explained: "Workers are shielded from retaliation on account of their assertion of rights protected under Title VII. But a complaining worker is not thereby insulated from the consequences of . . . poor performance." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008). Accordingly, the Court finds that summary judgment in favor of Defendant is proper on Counts II and IV.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendant's Motion (ECF No. 48) is GRANTED. A separate Order will follow.

Date: 7 April 2023

A. David Copperthite
United States Magistrate Judge